UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KELLY LYNN BALLINGER,

                Petitioner,                          Case No. 20-cv-13433
                                                      Hon. Matthew F. Leitman

v.

JEREMY HOWARD,

                Respondent.
_____/

## ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1), (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Kelly Lynn Ballinger is a state prisoner in the custody of the Michigan Department of Corrections.  On March 29, 2018, a jury in the Kalamazoo County Circuit Court convicted Ballinger of first-degree child abuse, Mich. Comp. Laws § 750.136b, and involuntary manslaughter, Mich. Comp. Laws § 750.321.  The state trial court then sentenced Ballinger to a term of 23 years, 9 months to 50 years in prison for the child abuse conviction and a term of 5 years to 15 years in prison for the manslaughter conviction.

Ballinger has now filed a *pro se* petition for writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.)  She seeks habeas relief on the ground that insufficient evidence supported her child abuse conviction and that her

1

sentence for the child abuse conviction is disproportionate. The Court has carefully reviewed the Petition and concludes that it does not state a claim upon which relief may be granted. Therefore, the Court **DENIES** the Petition. The Court also **DENIES** Ballinger a Certificate of Appealability, but it **GRANTS** her leave to proceed *in forma pauperis* on appeal.

## I

Ballinger's convictions arose from the death of her four-year-old daughter. Ballinger and her boyfriend, Matthew Ryan Longenecker, were tried jointly before separate juries. The Michigan Court of Appeals summarized the relevant factual background as follows:

> Defendants' convictions arose from the death of Ballinger's four-year-old daughter, DT, in the early morning hours of July 9, 2017. Longenecker, who was not DT's father, was Ballinger's live-in-boyfriend at the time. The evidence showed that DT had suffered numerous injuries from blunt force trauma before her death. On the night at issue, her head had been covered; she had been tightly wrapped in blankets, and taped. There was evidence that she aspirated vomit, asphyxiated, and died. The evidence regarding the level of abuse perpetrated against DT was horrific.

> The trial court held a joint trial with separate juries. Both Ballinger and Longenecker argued at trial that they did not intend to harm DT and that they did not know that she was likely to suffer harm from being tightly wrapped in blankets. Longenecker's jury rejected his argument and found him guilty as charged. Ballinger's jury agreed that she was not guilty of felony murder, but found her guilty

2

of involuntary manslaughter. Ballinger's jury also found
her guilty as charged on the remaining offenses.

*People v. Ballinger*, No. 344038, 2020 WL 814700, at *1 (Mich. Ct. App. Feb. 18,

2020).

Ballinger appealed her convictions to the Michigan Court of Appeals raising

the same claims that she raises in this Petition. The Michigan Court of Appeals

affirmed her convictions and sentence. *See id.* Ballinger then filed an Application

for Leave to Appeal in the Michigan Supreme Court. That court denied leave. *See*

*People v. Ballinger*, 948 N.W.2d 579 (Mich. 2020).

Ballinger then filed her Petition in this Court. (*See* Pet., ECF No. 1.) Ballinger

raises two claims. First, she says that the evidence was insufficient to support her

conviction for first-degree child abuse. Second, she asserts that her sentence for

first-degree child abuse is disproportionate because the trial court exceeded the

sentencing guidelines by five years.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")

requires federal courts to uphold state court adjudications on the merits unless the

state court's decision (1) "was contrary to, or involved an unreasonable application

of, clearly established Federal law, as determined by the Supreme Court of the

United States," or (2) "was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

3

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

In her first claim, Ballinger argues that the prosecution failed to present sufficient evidence to establish the *mens rea* element of her first-degree child abuse conviction. The Michigan Court of Appeals considered Ballinger's sufficiency-of-the evidence claim on direct review and rejected it:

> To convict a person of first-degree child abuse, the prosecution must prove, in relevant part, that the perpetrator "knowingly or intentionally cause[d] serious physical or serious mental harm to a child," MCL 750.136b(2), or aided and abetted another in causing serious physical or mental harm to a child, MCL 767.39. … "Because the Legislature provided that the perpetrator must 'knowingly or intentionally' cause the serious physical harm, it is not sufficient for the prosecution to prove that a defendant intended to commit the act that caused the physical harm; the prosecution must prove that the 'defendant intended to cause serious physical harm or knew that serious physical harm would be caused by [his or] her act.' " *People v. McFarlane*, 325 Mich. App. 507, 513-514, 926 N.W.2d 339 (2018) (alteration in original), quoting *People v. Maynor*, 470 Mich. 289, 291, 683 N.W.2d 565 (2004). "[T]he prosecution may rely on minimal circumstantial evidence to prove that the defendant had the required mental state." *McFarlane*, 325 Mich. App. at 516, 926 N.W.2d 339. Moreover, knowledge includes actual and constructive knowledge. […] As such, a reasonable jury can infer from the nature

4

of the act itself—such as the violence of the act—that the perpetrator must have intended to cause serious physical harm or knew that serious physical harm would likely result. *McFarlane*, 325 Mich. App. at 516-517, 926 N.W.2d 339.

In this case, Ballinger's jury watched a video of her making statements to police officers in which she described how she and Longenecker had been disciplining DT over the past few weeks. The jury also saw messages in which Longenecker insisted that Ballinger use severe physical discipline with DT because he believed that DT was "evil" and posed a danger to the baby [Longenecker's child with Ballinger].[] It was clear from Ballinger's statements to the police that she did not observe DT harming the baby. Instead, the evidence showed that it was Longenecker who instigated the idea that DT was a four-year-old psychopath who deserved extreme and cruel punishment to correct her purported behavior. Ballinger did claim that DT admitted to harming the baby, but the totality of the circumstances suggested that Longenecker had targeted DT for violence and that Ballinger chose to go along with his plan, even if somewhat reluctantly.

The jury learned that DT had suffered injuries to her face and head. Although Ballinger told officers that DT inflicted those injuries on herself, the jury saw text messages that indicated that Longenecker and Ballinger were physically abusing DT. Indeed, the jury saw numerous text messages in which Longenecker insisted that Ballinger violently punish DT. He stated that she should beat DT and threaten to smash her teeth out. And Ballinger acquiesced to his demands; she wrote in one text message that she wanted to hit DT some more but her hand hurt.

[….]

Additionally, the jury heard and saw evidence that Ballinger refused to get medical attention for DT's gaping wound [to her head] and took steps to prevent others from

5

discovering that DT was being physically abused.
Ballinger acknowledged in text messages that she knew
that Longenecker had been injuring DT and did not take
any steps to stop him. Instead, she asked him to stop
inflicting the injuries. On another occasion, Ballinger
pointed out the implausibility of Longenecker's
explanations for DT's injuries by noting that DT would
have had to have fallen out of bed quite often to have
suffered the injuries that she had. Ballinger further agreed
that they had been forcing DT to wear a diaper, ostensibly
because she was not wiping herself well enough. Ballinger
even stated that she had been violent with DT: She
admitted to grabbing the child by her hair with both hands
and swinging her to the ground where DT may have hit a
rock or other hard surface. Other text messages suggested
that Ballinger physically struck DT. Moreover,
Longenecker's mother testified that she had seen Ballinger
slap and spank the children and observed injuries on DT.
Longenecker's mother did not do anything because her
son and Ballinger always had an explanation for the
injuries. The totality of the evidence permitted a
conclusion that Ballinger was a willing participant in
Longenecker's plan to humiliate and abuse DT.

Ballinger also admitted that she and Longenecker had
been working together to wrap DT in blankets—like a
mummy—and then secure her in the blankets with tape.
She stated that Longenecker sometimes covered DT's face
with a blanket or other things to "get the devil out" or make
her "scream and shit." The jury saw that Ballinger told
officers that DT's screams would sometimes keep the
other children up at night. The jury also read text messages
in which Longenecker bragged to Ballinger that his
method of wrapping DT in tape was "genius" because the
more she struggled to move, the tighter the wrap would
get. It is within common knowledge that children can be
suffocated if improperly restrained or if the child's
airways are obstructed. … This evidence showed that
Ballinger knowingly and willingly participated in the
wrapping, knew that DT was dangerously restrained on

those occasions, and knew that it terrified the child and caused her to scream.

Moreover, the evidence from the night of DT's death permitted findings that DT was in particular danger and that Ballinger knew about the danger. Ballinger agreed that she was home and that she helped Longenecker wrap the child. She told officers that she saw DT vomit while being wrapped. Ballinger admitted that DT pleaded with her for help, but Ballinger refused to assist her. Ballinger also told officers that she heard DT making an odd noise later that night and that she again did not help the child. It was Ballinger who later discovered DT when she was already "stiff as hell."

Finally, the jury heard from the pathologist that DT had numerous physical injuries, which included the gaping wound to her head, and that she had vomited and aspirated some of the vomit. The pathologist opined that DT died from a combination of factors, including asphyxiation and physical injuries. He also stated that hyperthermia—high body temperature—may have played a role in her death because hyperthermia would have raised the child's heart and respiration rates. The pathologist noted that asphyxiation can occur from an obstruction in the airways and/or as a result of constriction of the torso. He noted too that DT had a torn frenulum, which is indicative of suffocation because a person will frequently shake their head violently in an attempt to clear an obstruction.

This evidence permitted findings that Ballinger intentionally participated in the wrapping of DT. She also knew that her head was likely covered, that DT had vomited, that she was suffering from physical injuries, and that she was distraught. A reasonable jury could find that Ballinger had constructive knowledge that wrapping a child in layers of blankets on a warm summer night, taping her torso, and covering her head—especially under circumstances in which the child may be ill or nauseous from other physical injuries—posed a significant danger

7

of serious physical harm. From the evidence that Ballinger ignored all the signs that DT was in physical danger, the jury could further infer that she intended to cause serious physical harm to her or knew that the likely result of her actions would be to cause serious physical harm to the child. *See McFarlane*, 325 Mich. App. at 516, 926 N.W.2d 339 (noting that only minimal circumstantial evidence is necessary to prove intent). Moreover, even if Ballinger did not herself intend to cause serious physical harm to DT through her actions, the evidence from the text messages strongly indicated that Longenecker intended to cause DT serious physical harm or acted with the knowledge that serious physical harm might result and that Ballinger aided and abetted his efforts despite knowing his intent. *See Robinson*, 475 Mich. at 15, 715 N.W.2d 44. As such, the prosecution presented sufficient evidence to allow a reasonable finder of fact to conclude that Ballinger had the requisite intent to commit first-degree child abuse, or aided and abetted someone who had the requisite intent. There was sufficient evidence to support the jury's verdict that Ballinger committed first-degree child abuse.

*Ballinger*, 2020 WL 814700, at ** 2-4.

## B

The clearly established federal law governing Ballinger's sufficiency-of-the-evidence claim is found in the line of United States Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause.  In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that

8

sufficient evidence supports a conviction if, "after viewing the evidence in the light

most favorable to the prosecution, *any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in

original).

Review of insufficiency-of-the-evidence claims under *Jackson* is especially

deferential in the habeas context. As the United States Court of Appeals for the

Sixth Circuit has explained, under AEDPA,

> a federal court's "review of a state-court conviction for
> sufficiency of the evidence is very limited." *Thomas v.*
> *Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018).
> Sufficiency-of-the-evidence claims, in light of both
> *Jackson* and AEDPA, face a high bar in habeas
> proceedings because they are subject to two layers of
> deference:
>
>> First, on direct appeal, it is the responsibility of the
>> jury—not the court—to decide what conclusions
>> should be drawn from evidence admitted at trial. A
>> reviewing court may set aside the jury's verdict on
>> the ground of insufficient evidence only if no
>> rational trier of fact could have agreed with the jury.
>> And second, on habeas review, a federal court may
>> not overturn a state court decision rejecting a
>> sufficiency of the evidence challenge simply
>> because the federal court disagrees with the state
>> court. The federal court instead may do so only if
>> the state court decision was objectively
>> unreasonable.

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Coleman v.*

*Johnson*, 566 U.S. 650, 651 (2012)). *See also Brown v. Konteh*, 567 F.3d 191, 205

(6th Cir. 2009) (explaining that when analyzing a *Jackson* claim on habeas review, a reviewing court "cannot even inquire whether *any* rational trier of fact would conclude that petitioner [ ] is guilty of the offenses with which he was charged. Instead, [the reviewing court] must determine whether the [state] Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial") (emphasis in original) (citation omitted).

## C

Ballinger has not shown that the Michigan Court of Appeals' decision denying relief on her sufficiency-of-the-evidence claim was contrary to, or unreasonably applied, the clearly established federal law described immediately above. Here, given the two layers of deference the Court must apply on habeas review, the Court cannot say that the Michigan Court of Appeals unreasonably determined that Ballinger acted with the required *mens rea*. Simply put, the Michigan Court of Appeals did not unreasonably determine that a jury, when drawing all reasonable inferences in favor of the prosecution, could reasonably have found beyond a reasonable doubt that Ballinger knowingly or intentionally participated in, or aided and abetted, the horrific abuse of DT. Indeed, Ballinger's own words, in her taped police interview and text exchanges with Longenecker, detailed her knowledge of and participation in a bedtime routine which included wrapping DT and then duct

taping her in such a way that she could not move.  DT's screams evidenced her obvious distress, yet Ballinger did not intervene.  Regardless of whether Longenecker rather than Ballinger initially labeled DT a devil child, there was overwhelming evidence that Ballinger went along with and participated in the various forms of "discipline."  And finally, on the night of DT's death, Ballinger refused to assist or free her daughter – both at the initial taping and later when DT made odd noises.  For all of these reasons, the Michigan Court of Appeals did not unreasonably apply *Jackson* when it concluded that there was sufficient evidence for a jury to find Ballinger guilty of first-degree child abuse.  The Court therefore denies Ballinger relief on this claim.

## B

In her second claim, Ballinger claims that her 285-month to 50-year sentence for first-degree child abuse is disproportionate to the offense and to her role in the abuse under both Michigan's constitution and the Eighth Amendment. (*See* Pet., ECF No. 1, PageID.44.)  She notes that the sentence exceeded the high end of the state sentencing minimum guidelines range by five years.  And she maintains that she "was not the instigator in this case, … did not catch on that the man with whom she lived was spiraling out of control," and "did not expect her favorite child to die." (*Id.*)

The Michigan Court of Appeals considered Ballinger's challenge to her sentence on direct review and rejected it. It held that the trial court's decision to exceed the guidelines was a "reasonable and principled" exercise of its discretion because the guidelines "did not adequately take into consideration the mental and physical torment that DT suffered in her last moments, nor did they account for the horrifying indifference Ballinger showed for her own daughter's welfare." *Ballinger*, 2020 WL 814700, at *8.

Ballinger has failed to show that she is entitled to relief on her sentencing claim. First, to the extent that Ballinger seeks relief on the basis that her sentence violated Michigan's constitution, that claim is not cognizable in this action. An allegation that a sentence violates a state constitution does not state a basis for habeas relief because "federal habeas corpus review does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). *See also Watkins v. Lafler*, 517 Fed.Appx. 488. 500 (6th Cir. 2013) ("[A] mere violation of state law cannot support a [federal] habeas claim").

Second, to the extent that Ballinger seek relief for an alleged violation of the Eighth Amendment, her claim fails because she has not shown that the Michigan Court of Appeals unreasonably applied clearly established federal law. As the Supreme Court has explained, "the Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme

sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (quoting *Solem v. Helm*, 463 U.S. 277 (1983)).  That "test is rarely met." *United States v. Young*, 766 F.3d 621, 625 (6th Cir. 2014) (citing *Ewing v. California*, 538 U.S. 11, 22 (2003).  Here, the Michigan Court of Appeals did not contravene this clearly established federal law when it upheld her sentence. Her sentence of 285 months to 50 years for the appalling abuse of her young daughter is not grossly disproportionate. The Court therefore denies Ballinger relief on this claim.

### III

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a Certificate of Appealability ("COA") is issued under 28 U.S.C. § 2253.  A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The Court will deny Ballinger a COA because jurists of reason could not debate the Court's conclusion that Ballinger failed to demonstrate an entitlement to habeas relief.

Although the Court declines to issue Ballinger a COA, the standard for granting an application for leave to proceed *in forma pauperis* on appeal is not as strict as the standard for certificates of appealability. *See Foster v. Ludwick*, 208 F.Supp.2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability requires a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status on appeal if it finds that an appeal is being taken in good faith. *See id*. at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24 (a). Although jurists of reason would not debate this Court's resolution of Ballinger's claims, an appeal could be taken in good faith. Therefore, Ballinger may proceed *in forma pauperis* on appeal.

## IV

For the reasons set forth above, the Court **DENIES** Ballinger's Petition for writ of habeas corpus (ECF No. 1, **DENIES** Ballinger a Certificate of Appealability, and **GRANTS** Ballinger leave to proceed *in forma pauperis* on appeal.

**IT SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  March 18, 2024

14

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 18, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126